[Civil No. 911    Filed March 30, 1906.]

[85 Pac. 952.]

F. S. PHEBY, Defendant and Appellant, v. LAKE SUPER-IOR AND ARIZONA MINING COMPANY, Plaintiff and Appellee.

1. MINES AND MINING—SALE—EQUITABLE INTEREST—NOTICE—BONA FIDE PURCHASER FOR VALUE.—A statement by defendant to the president of a corporation which to defendant's knowledge was in possession of a mining claim under an option to purchase, and was about to exercise the option, that he would have had an interest in said claim if L. had done as he agreed to do, to which the president replied that if there was any misunderstanding between defendant and L. the time to arrange that would be before the money was turned over, was insufficient to put either the president or his company upon notice of defendant's interest or claim of interest.

2. EVIDENCE—PREPONDERANCE.—It is within the province of a trial court to take the testimony of one witness as against other witnesses and enter judgment accordingly.

3. MINES AND MINING—ACTION TO QUIET TITLE—EQUITABLE INTEREST FOR DEFENSE—BONA FIDE PURCHASER.—Where plaintiff having the legal title to a mining property brought an action to quiet title, and defendant answered admitting plaintiff's legal title but set up an equitable interest, asking that such equitable interest be confirmed and the legal title held by plaintiff be conveyed to defendant, defendant assumed the attitude of one seeking to enforce an equitable interest as against the legal title and plaintiff was entitled to plead that it was a *bona fide* purchaser for value without notice.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Pinal. Fletcher M. Doan, Judge.    Affirmed.

On appeal to the United States supreme court.

The facts are stated in the opinion.

Frank Cox, and Alfred Franklin, (Charles S. Wheeler, Guy C. Earl, and Thos. B. Pheby, of counsel), for Appellant.

The generally received doctrine upon the subject of notice is that whatever puts a party upon inquiry amounts, in law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the facts, by the exercise of ordinary diligence and understanding. Under this rule it follows, that each case as it arises must be governed by its own peculiar circumstances, and, as was said in *Doyle* v. *Teas,* 4 Scam. 202, when the court is satisfied that the subsequent purchaser acted in bad faith and that he either had actual notice, or might have had notice, had he not willfully or negligently shut his eyes against those lights which, with proper observation, would have led him to knowledge, he must suffer the consequences of his ignorance, and be held to have had notice, so as to taint the purchase with fraud in law. It is sufficient if the channels which would have led him to the truth were open to him, and his attention so directed that they would have been seen by a man of ordinary prudence and caution, if he was liable to suffer the consequences of his ignorance. *Harper* v. *Ely,* 56 Ill. 194; *Parker* v. *Merritt,* 105 Ill. 293, 300. See, also, *Meier* v. *Blume,* 80 Mo. 179; *Astie* v. *Leeming,* 3 Abb. N. Cas. (N. Y.) 25; *Doran* v. *Dazey,* 5 N. Dak. 167, 57 Am. St. Rep. 550, 64 N. W. 1023; *Rankin Mfg. Co.* v. *Bishop,* 137 Ala. 271, 34 South. 991, *Beebe* v. *Wisconsin etc. Loan Co.,* 117 Wis 328, 93 N. W. 1103; *Lain* v. *Morton,* (Ky. App.) 63 S. W. 286.

Notice to agent need not be more circumstantial than had it been given direct to the principal. *Hart* v. *Farmers' and M. Bank,* 33 Vt. 252.

The declarations of a president of a corporation may be received in evidence to show that at the time the corporation purchased land it had actual notice of a mortgage on the same. *Christy* v. *Dana,* 42 Cal. 175.

Notice to the president is notice to the corporation. Thompson on Corporations, secs. 5195, 5196; *Craigie* v. *Hadley,* 99 N. Y. 131, 52 Am. Rep. 9, 1 N. E. 537; *Burditt* v. *Porter,* 63 Vt. 296, 25 Am. St. Rep. 763, 21 Atl. 955; *Paul Steam System Co.* v. *Paul,* 129 Fed. 757; *Balfour* v. *Fresno Canal Co.,* 123 Cal. 395, 55 Pac. 1062; *Village* v. *First Nat. Bank,* 96 N. Y.

550; *Porter* v. *Bank of Rutland,* 19 Vt. 410; *Ditty* v. *Dominion Nat. Bank,* 75 Fed. 769, 22 C. C. A. 376; *Huron etc. Co.* v. *Kittleson,* 4 S. Dak. 520, 57 N. W. 233; *Holden* v. *New York etc. Bank,* 72 N. Y. 286.

Notice to the president of a mining company is notice to the corporation. *Union G. M. Co.* v. *Bank,* 2 Colo. 248.

A corporation will be affected with constructive notice of private dealings had between its officers and a third person where the officer is its organ of connection with the outside world and is the proper officer to receive and communicate notice of the particular fact to it; since it would be idle for the other party, for the purpose of affecting the corporation with notice of the fact, to communicate it a second time to the officer or agent. *Scripture* v. *Francestown S. Co.,* 50 N. H. 571.

Hereford & Hazzard, for Appellee.

SLOAN, J.—The Lake Superior and Arizona Mining Company, a corporation, brought suit against F. S. Pheby in the court below to quiet its title to the Golden Eagle and Golden Eagle Extension mining claims, situated in the Pinal mining district, Pinal County. Pheby set up in his answer an equitable claim to a one-fourth interest in said property, and asked that this equitable estate be confirmed by the court and a conveyance to him of the legal title to such interest be required of the plaintiff. To this answer the plaintiff pleaded, among other matters, that it was an innocent purchaser for value of the entire property without notice actual or constructive, at the time of the purchase, of any interest legal or equitable held or claimed by Pheby. The trial court found the issue thus raised by the answer of the defendant, and the reply made thereto by plaintiff in favor of the latter, and gave judgment quieting its title. The defendant moved the court to grant him a new trial, which motion was denied and an appeal was thereupon taken by him from this ruling and from the judgment.

The questions raised by appellant in his assignment of errors and presented in the briefs of his counsel are: 1. The sufficiency of the evidence to sustain the finding that appellee was an innocent purchaser without notice of defendant's claim of title; and 2. The question of law whether the findings

support the judgment. The facts which bear upon the question of notice on the part of appellee of any outstanding claim made by appellant at the time of the purchase were these: The Golden Eagle mining claim was located January 1, 1898, by George Lobb and C. C. Woolf. On November 18, 1899, the Golden Eagle Extension claim was located by George Lobb. On May 31, 1902, one W. A. Holt obtained a lease and bond of the Golden Eagle and Golden Eagle Extension from Lobb, acting for himself and as attorney in fact for Woolf, and in consideration thereof paid the sum of one thousand dollars in cash. The contract of lease and bond by its terms was for a term of eighteen months, and gave to Holt, his agents or assigns, the right of possession, operation, and development of the claims, and also an option to purchase the same at any time during the life of the agreement for thirty-one thousand dollars. Lobb, for himself and as attorney in fact for Woolf, agreed in the contract of lease to execute a good and sufficient deed to the mining claims, and to deposit the same in escrow to be delivered to Holt or his assigns upon the payment of the thirty-one thousand dollars within the time specified in the contract. In pursuance of this agreement a deed was executed by Lobb, for himself and as attorney in fact for Woolf, and deposited in the Bank of Globe to be held in escrow under the terms of the contract. Holt, thereafter, assigned his lease and option to one Angus W. Kerr, who, in October, 1902, assigned the same to the Lake Superior and Arizona Mining Company. In November, 1903, the latter company made the payment called for in the option agreement and obtained the deed from Lobb and Woolf, held in escrow by the Bank of Globe, and placed the same of record. It also appears that from the time Holt took possession of the property to the month of April, 1903, there was expended upon the property by Holt and the company the sum of sixty thousand dollars in development work. It was conceded that neither Holt nor Kerr, while they were holders of the option or prior thereto, had any notice, actual or constructive, that Pheby had or claimed any interest in the property. If the Lake Superior and Arizona Copper Company, prior to its paying the purchase price and obtaining the deed in escrow, had notice of such claim it was derived solely from an interview between Frank S. Carleton,

president of the company, and F. S. Pheby at the Copper Queen Hotel in Bisbee during the month of April, 1903, at which interview Joseph J. Pheby, brother of F. S. Pheby, was present. F. S. Pheby testified that at this interview he informed Carleton that he was a part owner in the Golden Eagle and Golden Eagle Extension and gave him in detail the facts which entitled him to an equitable one-fourth interest therein. Joseph J. Pheby corroborated his brother, and testified substantially to the same effect. The testimony of Carleton was that he met Pheby and his brother at the Copper Queen Hotel in April, 1903, at the request of the Phebys, to talk over a proposition relating to the purchase of the Silver King mine; that during the conversation George Lobb was mentioned, and that F. S. Pheby then said that Lobb was a man who did not fulfill his word, and to instance this stated that if Lobb had done as he agreed to do he, Pheby, would have had an interest in the property in question; that he stated to Pheby that his company had taken over the option for the purchase of the property which would not expire until November, 1903, and the balance of thirty thousand dollars would then be paid to the order of Lobb, and advised Pheby if he had any misunderstanding with Lobb that the time to arrange that would be before the money was turned over; that he also informed Pheby that the records had been carefully examined, and the title appeared to be clear; that thereupon Pheby again said that if Lobb had done as he agreed to do he would have had an interest in the two mining claims; that no other information was given him by Pheby as to his claim of interest than the above, and that Pheby did not state to him at any time during the interview that he then had or claimed any interest in the property. Carleton did not tell of this conversation to any other member of the company, nor was it mentioned by him at any meeting of the board of directors of the company for the reason, as stated by him, that the impression left upon his mind by the conversation with the Phebys was that F. S. Pheby did not claim any interest in the property at the time.

The trial court accepted the testimony of Carleton, and rejected that of the Phebys. It was clearly within the province of the trial court to take the testimony of the one witness as against the testimony of other witnesses. The question

arises, therefore, whether, under the testimony of Carleton, notice of Pheby's interest in the property can be imputed to the appellee.  Disregarding the question whether notice sufficient to put the company on inquiry, when given to its president, not in a matter pertaining to the business of the company but incidentally, can be imputed to the company, we think the testimony of Carleton fails to show such notice. Carleton had a right to assume that Pheby as an honest man would disclose fully his interest or claim of interest under the circumstances.  Good faith would require this on the part of Pheby when informed by Carleton of the company's possession of the property under the option.  Pheby's declaration, under these circumstances, that he, Pheby, would have had an interest had Lobb done as he agreed, might properly be construed as a declaration that he did not, in fact, possess or claim such interest at the time, and would tend to allay rather than to arouse a suspicion that he had not disclosed fully his relation to the title.  We do not find as a matter of law that the facts testified to by Carleton were sufficient to put him or his company upon notice of Pheby's interest or claim of interest.

It is argued by counsel for appellant that, conceding want of notice on the part of the company of Pheby's interest or claim of interest prior to its purchase of the property in question, this fact can afford no ground for relief.  They invoke the doctrine that in equity want of notice of an outstanding interest in real estate is but a shield in the hands of an innocent purchaser which he may use in defense of his title when it is attacked, and is not a weapon which he may use to support his claim of title in any proceeding brought by him to establish such title.  Without regard to the effect which modern registration acts may have had in changing the doctrine of a *bona fide* purchaser from a rule of inaction, as it is sometimes termed, into a rule of property the soundness of this contention, as applied to the practice in courts of equity, must be conceded.  This case is, however, not one which calls for any modification of the equitable rule in order that the judgment of the trial court be sustained.  The appellee sued under the statute to quiet its title.  This title is a legal one.  The appellant in his answer admitted that the appellee held the legal title to the property in controversy,

but set up an equitable interest and asked that this interest be confirmed, and that the legal title held by appellee be conveyed to him. Appellant, therefore, assumed the attitude of one seeking to enforce an equitable interest as against the legal title held by the plaintiff. Obviously, therefore, the situation thus presented was the same as if appellant were the plaintiff. Appellee could, therefore, under the doctrine invoked, protect its legal title as against the claim of appellant by setting up that it was a *bona fide* purchaser for value without notice.

We find no error in the record, and the judgment is therefore affirmed.

CAMPBELL, J., and NAVE, J., concur.

KENT, C. J., took no part in the consideration or determination of the case.